PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ CORRETJER HERNÁNDEZ, Defendant and Appellant.

No. 8316. Argued December 13, 1940.—Decided February 13, 1941.

*A. Lastra Chárriez* and *A. D. Marchand Paz,* for appellant. *George A. Malcolm, Attorney General,* and *R. A. Gómez, Prosecuting Attorney,* for The People, appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

José Corretjer Hernández was charged with an offense of contempt for perjury. The order issued to that effect by Judge Córdova of the District Court of San Juan follows the special law upon this matter. Act No. 41 of 1911, to provide a summary punishment for perjury committed in open court, and for other purposes. Penal Code (1937 ed.) page 68.

After the trial had been held, the court found defendant guilty and sentenced him to two months in jail. Corretjer appealed to this Court and assigns three errors in his brief as committed by the court: 1, when it acted without jurisdiction; 2, when it rendered judgment at a moment when the prosecution within which the contempt for perjury was committed was no longer pending before the court, and, 3, when it rendered judgment based on insufficient evidence.

█ The lack of jurisdiction alleged in the first assignment of error rests upon the fact that the initial order does not mention the official before whom the supposed perjurer took the oath, nor the authority of said official to accept said oath.

The order with which we are dealing reads as follows:

"ORDER.—Whereas: During the trial in this court today, of the criminal case No. 3963, People of Puerto Rico v. José Corretjer Hernández, for murder in the second degree, the defendant, José Corretjer Hernández, was called to the stand as a witness for the defense *and after having taken an oath in open court* to tell the truth, the whole truth and nothing but the truth, intentionally and contrary to his sworn oath and in open court, he testified concerning a certain matter essential and pertinent to the case, in a false manner and knowing that it was not the truth; to wit: that on the 4th of October, 1936, and in the place and at the time when José Diosvaldo Díaz was mortally wounded, said witness José Corretjer Hernández was not carrying on his person a revolver holster, the truth being that the above mentioned witness was then and there bearing upon his person a revolver holster;—Whereas: The judge who signs this order and who has presided over the court during the trial of said case, is convinced that the above mentioned witness, José Corretjer

Hernández, committed perjury in his testimony before the court in the manner above set forth;—Therefore: The undersigned judge decrees the arrest and detention of José Corretjer Hernández under the custody of the Warden of the District Jail of San Juan, and orders him to appear before this court on December 4, 1939, at nine o'clock in the morning, to show cause why he should not be convicted of contempt for perjury in open court; it being provided likewise that the above mentioned José Corretjer Hernández is authorized to give bond to the amount of $500 for his temporary liberty until he should appear to show cause." (Italics supplied.)

The lack of jurisdiction which is now alleged was not raised in the district court in spite of the fact that there was filed a demurrer for lack of sufficient facts based on the reason that even accepting the truth of the facts alleged in the order, defendant was not charged with any offense, since the fact which he was said to have lied about was not one essential to the main case.

In a similar case, *The People* v. *Alvarado*, 19 P.R.R. 827, 829, this Court said:

" . . . The trial was had on April 4, 1912, and on April 9, 1912, the court found the defendant guilty of contempt for perjury and fined him $100, or in default thereof, to undergo a day in jail for every $2 of the fine which he failed to pay.

"The appeal is from this judgment and the record contains a bill of exceptions and a statement of the case, and in his brief the appellant has presented nine grounds of error. The first ground of error is lack of jurisdiction in the court. The appellant first maintains that jurisdiction is lacking because the original order contained no allegation that on the date on which the order was issued by the court the civil proceeding was still pending. This matter was not alleged in the court below, where it was properly a matter of defense, and, in the absence of any showing to the contrary, the presumption would be that the court followed the law and that the civil case was still pending."

Accepting however that this question being one of jurisdiction could be raised originally in this Court, yet we must say that it is not well grounded.

The entire argument of appellant is based on the provisions of Section 117 of the Penal Code, which says:

"Every person who, having taken an oath that he will testify, declare, depose, or certify truly *before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered,* wilfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury . . ." (Italics supplied.)

And in this case we are not dealing with the application of this Section. Appellant was tried and convicted in accordance with the special statute upon the matter which reads thus:

"*That when, during the trial of any case pending in any* municipal or district *court* in Puerto Rico, *a witness shall appear and take an oath,* or shall affirm that he will testify and depose truly before *any such tribunal* in any of the cases in which such an oath or affirmation may be administered, and after having taken such oath or affirmation, shall wilfully, and contrary thereto, state as true any material matter which he knows to be false, or which he does not know to be true, is guilty of perjury; *and when such oath or affirmation is taken in open court,* and is violated as herein provided, then said witness is guilty of a contempt of court, and shall be punished as hereinafter provided. If the judge presiding in said case shall be satisfied, in any case pending in his court, that a witness, after taking the oath, or after having affirmed, as prescribed by statute, to testify truly in any matter pending in the court, is guilty of perjury as herein defined, then it shall be the duty of said judge so trying the case, and he is hereby empowered on his own motion alone, to cause the arrest and detention of the party so offending, and he shall issue an order, to be served on the offending party, to appear and show cause why he should not be punished for contempt of court . . ." (Italics supplied.)

Therefore, what appears in the first Whereas of the order which we have copied is sufficient to comply with the requisite of the oath. There was no error.

■■ The lack of jurisdiction which is raised by the second assignment of error, that is, that the district court lost whatever jurisdiction it had over the case because when it

rendered judgment the case within which the contempt was committed was no longer pending before it, is also raised for the first time on appeal.

The record shows that the initial order was issued a day before the trial for murder ended. And that is sufficient in our opinion for the court to acquire jurisdiction over the case in accordance with the terms of the special statute upon the matter.

In support of his contention, appellant cites the decision of this Court in the case of *The People* v. *Valcourt,* 18 P.R.R. 471, 475. In that case the Court, speaking through Mr. Justice McCleary, expressed itself as follows:

"But there are other matters to be taken into consideration in the decision of this case, some of which have caused the reargument of the same and the filing of additional briefs by the counsel for The People and the accused. The first is, as to the meaning of the words, 'during the trial of any case pending' in the courts, used in the first section of the statute punishing such contempts. Remembering that we have in our Penal Code a valid and subsisting law denouncing and punishing perjury in the regular way, by means of an information and a trial before a jury or the court, like any other felony, may assist us in this matter. Contempts committed in presence of the court, like the present act charged against the appellant, are usually punished summarily and while the current business of the court is pending. The perjury can be inquired into and, if necessary, punished at any time within the time prescribed by the statute of limitations. But the contempt committed by the perjurer, in attempting to deceive the court by false testimony, requires more summary proceedings. For this reason perhaps the proceeding for contempt is limited to the time 'during the trial of a case pending.' A civil case is pending before the court from the time the complaint is filed until the judgment is rendered disposing of the matter litigated. When the case ceases to be pending, the jurisdiction to punish for contempt committed by means of perjury ceases, and the delinquent is liable only to prosecution for the perjury in the usual manner."

Although the language of the opinion is susceptible of the interpretation given to it by appellant, it does not have the

scope which the latter attributes to it. There was no necessity to speak with greater precision in the *Valcourt* case because the proceedings there not only terminated but were begun after the end of the trial in which the perjury was committed—a divorce suit—while in this case, although the proceeding terminated after the trial for murder, they were begun before the finish of said trial. What the special statute contemplates is the dignity of the court offended by a person who appears before it and takes an oath to tell the truth, and then deceives it by testifying knowingly, falsely and wilfully upon some question essential to the case being tried; and the immediate reaction of the court ordering the detention of the offender when it is convinced of his illegal and offensive action. See *People* v. *Aquino,* 33 P.R.R. 247.

Once the proceeding is begun, the jurisdiction of the court over it continues until its end and it is not necessary that it be finished before the main action is terminated. This proceeding arises within the main action but is independent of it. It was not the intention of the legislature that the result of this investigation should be taken into consideration in the decision of the criminal case or the civil action in which the false testimony was given. All to the contrary. In jury trials, for example, the statute has been attacked because of the effect that the decision of the judge might have on the verdict in the main case, and the law has been upheld because it has been concluded that the proceeding it provides does not contemplate such a purpose. There was no error.

Neither was there committed the third and last of the errors assigned, that is, that which attacks the sufficiency of the evidence.

The opinion rendered by the trial court is so complete and is so well reasoned that it seems proper to us to transcribe it as the basis of our decision upon the inexistence of this error. It says:

" . . . On November 24, 25, 27 and 28, 1939, there was held before this court the trial by jury of the criminal action No. 3963, of

*The People of Puerto Rico* v. *José Corretjer Hernández,* for murder. The information charged the defendant José Corretjer Hernández with having killed the human being José Diosvaldo Díaz, illegally, voluntarily, with malice aforethought and deliberation. The theory and evidence of the district attorney tended to prove that on the 4th of October, 1936, José Diosvaldo Díaz was driving a Pontiac automobile and that defendant, José Corretjer Hernández was seated on the right front seat of said car at Díaz's side, and the car was coming along Brumbaugh Street in Río Piedras; that when it reached the corner of Brumbaugh and Giorgetti Streets, Díaz turned toward the left, stopping the car in front of the police station, in front of which and with his back to the street there was standing Sergeant Martínez, today Chief of Police Martínez.

"When Díaz stopped his car, he said to Sergeant Martínez: 'Corporal, corporal, please come here', and Corretjer immediately said: 'No, no, not that.' When he heard the voices, Chief Martínez turned around and was able to see Corretjer at the very moment that he pointed a revolver at Díaz and fired a shot which caused Díaz's death a few minutes later. Chief Martínez then threw himself upon Corretjer, seized the revolver which was on the floor of the car and turned Corretjer over to Policeman Pedro A. Rivera, at present a corporal, instructing him to watch over Corretjer. Policeman Rivera took Corretjer to the interior of the police station and he testifies that when he noticed a certain movement of Corretjer which seemed suspicious to him, he searched him underneath his coat and found a revolver holster.—The theory and the evidence of the defense tends to prove that on the day of the events, Corretjer did not carry a revolver or a holster; that the revolver was carried by and belonged to José Diosvaldo Díaz; that José Diosvaldo Díaz had invited Corretjer to ride in his car in order to take him to his home on the corner of Giorgetti and Muñoz Rivera Streets; that when the automobile reached the corner of Brumbaugh and Giorgetti Streets, instead of turning toward the right as he should have done, if his intention was to drive Corretjer to his house, Díaz turned on unexpectedly to his left and parked his car in front of the police station where Chief Martínez was standing and that Díaz then drew out a revolver which he carried hidden beneath his shirt (the evidence of the defense and of The People is in agreement with respect to the fact that Díaz was in his shirt sleeves and Corretjer was wearing a coat) and pointed it at Corretjer who said: 'No, no, not that', at the same time that he seized the weapon with which Díaz was attacking him, turning it against the latter, and that when

Díaz saw himself in danger, he cried: 'Corporal, corporal, please come here', and in this struggle a shot was fired which caused Díaz's death.—Chief Martínez testified that he did not see any struggle, that what he did see was Corretjer pointing his revolver at Díaz. Corporal Rivera testified, as we have seen, that Corretjer was carrying a holster. Corretjer was the only witness who testified that the revolver was carried by Díaz.

"The judge being of the opinion that Corretjer was lying deliberately when he denied under oath that he was carrying a revolver and a holster, and before the case was submitted to the jury, he ordered the jury to retire and proceeded to issue an order requiring Corretjer to show cause why he should not be convicted of contempt for perjury. On December 7, Corretjer appeared to show cause. He filed a demurrer to the order because he thought that no facts were alleged which proved that his testimony concerning the holster was essential to the case, and the demurrer was overruled. (See *People* v. *Medina*, 38 P.R.R. 623.) There was then presented the evidence for The People consisting of the testimony of Chief Martínez, Corporal Rivera and Corretjer himself. The respondent then requested the court to set aside the order for lack of evidence, on the ground that it had not been proved that Corretjer had the intention of lying, knowing that what he said was false. After said motion had been denied, the defendant stated through his attorney that he wished to rest on his motion and therefore submitted the case exclusively on the evidence for The People.

"Of the essential facts involved in this proceeding, the only ones upon which there can be any controversy and the only ones which defendant's attorney has discussed, are the following: 1. If Corretjer's testimony with respect to the holster was or was not upon a material matter. 2. If Corretjer's testimony with respect to the holster was or was not false. 3. If Corretjer's testimony was false, did he give said testimony knowing that it was not the truth?.

"What is understood by a 'material matter' in a proceeding for contempt by perjury? The phrase is certainly not limited in its scope to those facts which must be alleged indispensably in an information. If that were so in a case in which the evidence was all circumstantial, there could not be substantial matter and no witness could ever commit perjury. It is evident that the meaning of 'material mater' is much broader, and includes any point which tends in some form or another to prove the offense or to connect defendant with the offense. See 20 Cal. Jur. 1012 *et seq.*

"In the specific case of People *v.* Corretjer, the circumstance of Corretjer carrying a holster is of great importance in the determination of whether it was Corretjer or Díaz who carried the weapon which caused the death. The principal witnesses for The People were Chief Martínez, Rafael Escobar and Corporal Rivera. Martínez and Escobar witnessed all the facts and testified that it was Corretjer who attacked Díaz with a revolver and that there was no struggle. But the witnesses of a crime which is committed in a few moments and without previous warning, may commit errors of observation, no matter their integrity or their intelligence. For that reason, the testimony of Corporal Rivera, who testified that he seized Corretjer's holster, supplies perhaps the most important link in the chain of evidence which placed the responsibility for the crime on Corretjer. Rivera cannot have been mistaken. Either he lied deliberately, without apparently and motive, or he did seize the holster from Corretjer. If he took the holster, and if Corretjer, instead of explaining this circumstance which so strongly incriminates him, denies that he had a holster, this point becomes not only a material matter, but one of the two or three essential facts in the determination of the defendant's guilt or innocence.

"Let us see if Corretjer's testimony is or is not false. Chief Martínez and Corporal Rivera testified in an impartial manner which gave the impression that they were telling the truth, as they understood it, of the facts which they were able to observe. No motive appeared which might have led these two officials to lie, exaggerate or disturb the truth of the facts. In spite of the fact that the events took place approximately four years before the trial and in spite that these witnesses had declared on the same way in two previous trials, the defense could not in any way weaken or impeach their testimony except through defendant's own declaration. The latter, while testifying, was visibly nervous, with a look in his eyes that evaded everybody in court except his counsel. His testimony was highly improbable. He tried to make the jury believe that Díaz, who was driving the car in which the crime took place, deliberately stopped the same in front of the police station in the presence of Sergeant Martínez, and that it was not until he had thus stopped his car, that he indicated his intention to kill Corretjer, pointing a revolver at him which Corretjer says that Díaz carried under his shirt. The court reached the conclusion that Corretjer was lying with respect to the holster as well as with respect to the possession of the weapon and to Díaz's attack, a conviction which

was not altered in any way at the hearing upon the order to show cause, since at said hearing the accused did not present any evidence.

"That Corretjer lied intentionally, knowing. that he was not telling the truth, is inferred by the court from the circumstances of the case. In no other way may the intention with which a crime is committed be established, except in rare cases, and aside from the fact that it can hardly be imagined that Corretjer denied that he was the owner of the holster through mistake or bad memory, he had plenty of opportunity to present said theory as a reason for which he should not be convicted of contempt and yet he did not do it. The court has no doubt that Corretjer committed perjury. It could be maintained, however, that the proceeding best fitted for such a case is not that of contempt but that of an information for the crime of perjury. The inherent power of courts to punish as contempt perjury committed in open courts, is firmly established. See the cases cited in 11 A.L.R. 342; 49 A.L.R. 987, and 73 A.L.R. 817. The American Courts, however, have placed upon themselves strict limitations in the exercise of this faculty, as a result of which they only make use of it in cases where the falsity of the testimony lies within the judicial knowledge of the court. (See the above cited cases.) These limitations, which unquestionably were applicable to the courts of Puerto Rico until 1911, were set aside by the legislature when it enacted the Act of March 9, 1911, providing a punishment for the offense of perjury in open court. (Penal Code, 1937 ed., page 68.) The above cited act grew out of the prevalence of perjury in Puerto Rico, and out of the fact that the jury institution was inadequate to punish said crime. (See *People* v. *Aquino*, 33 P.R.R. 247.) As the result of this statute, which seems to be unique in the American jurisdictions, the courts of Puerto Rico have the duty of punishing perjury in open court through the summary proceeding of contempt, whenever the court is convinced that a witness has committed perjury, and that there is some evidence in conflict with the false testimony. *People* v. *Aquino*, 33 P.R.R. 247. The situation which caused the legislature to give the courts the faculty of punishing perjury as contempt is still prevalent. In this case, the court being convinced that the defendant committed perjury in open court, its duty is inescapable."

For these reasons the judgment appealed from must be affirmed.